UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROCCO GENOVA, JR., on behalf of himself and all others similarly situated, | |
| | **OPINION** |
| Plaintiffs, | |
| v. | |
| | Civ. No. 16-cv-1260 (WHW)(CLW) |
| TOTAL CARD, INC. and JOHN DOES 1-25, | |
| Defendants. | |

**Walls, Senior District Judge**

In this putative class action, Plaintiff Rocco Genova, Jr. alleges that Defendants violated provisions of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA"), by sending Plaintiff a debt collection notice containing false, deceptive, or misleading statements about the legal status of Plaintiff's debt. Defendant Total Card, Inc. moves to dismiss the complaint. Decided without oral argument under Fed. R. Civ. P. 78, Defendant's motion is granted.

### FACTUAL AND PROCEDURAL HISTORY

For purposes of this opinion, the Court will assume the truth of the following facts alleged in Plaintiff's complaint. ECF No. 1. Plaintiff Rocco Genova, Jr. is a resident of New Jersey. *Id.* ¶ 6. Defendant Total Card, Inc. ("TCI") is a collection agency with its principal office located in Sioux Falls, South Dakota. *Id.* ¶ 7. Defendant TCI regularly uses the mail, telephone, and facsimile to attempt to collect debts on behalf of itself and other buyers. *Id.* ¶¶ 8-10. John Does 1-25 (the "John Doe Defendants") are fictitious names of individuals and business entities that may become known to Plaintiff Genova in discovery. *Id.* ¶ 11.

FOR PUBLICATION                                                                                          CLOSE

"Some time prior to November 12, 2015" – but presumably more than six years before that date – Plaintiff incurred a debt (the "MBC Debt") to the creditor Merrick Bank Corporation ("MBC"). *Id.* ¶¶ 24-27. Plaintiff allegedly defaulted on the MBC Debt. *Id.* ¶ 30. Defendant TCI acquired the MBC Debt and was hired to collect it. *Id.* ¶¶ 28-29. About November 12, 2015, Defendant sent a collection letter (the "Letter") to Plaintiff. *Id.* ¶¶ 31-33; *see also* Letter, ECF No. 1-1. The Letter stated, in part, that Plaintiff owed MBC a total of $1,487.63, but that Plaintiff could "save" by making "6 monthly payments of $62.00" or "a one-time payment for $298" as a "full and final settlement on this account." ECF No. 1 ¶ 34; ECF No. 1-1 at 1. The Letter also stated that "[t]he law limits how long you can be sued on a debt. Because of the age of your debt, Merrick Bank Corporation will not sue you for it. If you do not pay the debt, Merrick Bank Corporation may report or continue to report it to the credit reporting agencies as unpaid." ECF No. 1-1 at 1.

More than six years had elapsed between Plaintiff's last payment on the MBC Debt and the date of the Letter. ECF No. 1 ¶ 35. In New Jersey, the limitations period for filing suit on a credit card debt is six years. *Id.* ¶ 36 (citing N.J.S.A. 2A:14-1). According to Plaintiff, however, the statute of limitations "restart[s]" if a debtor makes a partial payment on a debt. *Id.* ¶ 37. Defendant's Letter did not inform Plaintiff that, by selecting the installment option and making his first payment of $62, he would "restart" the statute of limitations, allowing Defendant or any other purchaser of the MBC Debt to bring a legal action against him to collect payment on the full amount of the Debt. *Id.* ¶¶ 37-40.

On March 4, 2016, Plaintiff filed a two-count complaint in this Court on behalf of himself and a class of all New Jersey individuals to whom Defendant sent, at any time between one year before and 21 days after the filing of the complaint, a collection letter on behalf of

MBC offering a payment plan on a debt for which the last activity had occurred more than six years before the date of the letter, where that letter failed to disclose that making a payment would restart the New Jersey statute of limitations for collection actions. *Id.* ¶¶ 13-14.

In Count One of the complaint, Plaintiff alleges that Defendant violated 15 U.S.C. § 1692e by using a "false, deceptive, or misleading representation or means in connection with the collection of any debt." *Id.* ¶¶ 44-45. Specifically, Plaintiff claims Defendant TCI violated this section of the FDCPA by (a) failing to notify him that his partial payment would restart the statute of limitations, (b) "making false, deceptive, or misleading representations concerning the character, amount, or legal status" of the MBC Debt, and (c) using "false representations and/or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id.* ¶ 46 (citing 15 U.S.C. §§ 1692(e)(2)(A), (e)(10)). In Count Two, Plaintiff claims that Defendant "violated various provisions of the FDCPA, including but not limited to 15 U.S.C. § 1692f," by using "unfair or unconscionable means to collect or attempt to collect any debt," again because Defendant allegedly failed to inform Plaintiff that a partial payment would restart the statute of limitations. *Id.* ¶¶ 48-52.

Defendant TCI now moves to dismiss the complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Mot. Dismiss, ECF No. 8; Mem. Supp. Mot. Dismiss, ECF No. 10. Defendant claims that the Letter did not misrepresent the character, amount, or legal status of the MBC Debt; that it used language approved by several regulatory agencies; that Plaintiff's partial payment would *not* restart the statute of limitations; and that the complaint fails to specifically allege how Defendants violated Section 1692f of the FDCPA. Plaintiff filed a brief in opposition on April 28, 2016, ECF No. 12, and Defendant filed a reply brief on May 9, 2016. ECF No. 13.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotations and alterations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." *Id.* at 679.

In considering the plaintiff's claims, the Court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint. *See Sentinel Trust Co. v. Universal Bonding Ins. Co.*, 316 F.3d 213, 216 (3d Cir. 2003); Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1357 at 299 (3d ed. 2014). "A 'document integral to or explicitly relied on in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 256 n.5 (3d Cir. 2004) (citing *In re Burlington Coat Factory*

*Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).[1]

A court may also consider and take judicial notice of matters of public record. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007); *Buck v. Hampton Tp. School Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). Such matters of public record may include prior judicial proceedings, *McTernan v. City of York, Penn.*, 577 F.3d 521, 526 (3d Cir. 2009), and government agency consent decrees. *Group Against Smog and Pollution, Inc. v. Shenango Inc.*, 810 F.3d 116, 127-28 (3d Cir. 2016) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("Courts have defined a public record, for purposes of what properly may be considered on a motion to dismiss, to include . . . letter decisions of government agencies . . . and published reports of administrative bodies.")).

If a complaint fails to state a claim upon which relief can be granted, a plaintiff should ordinarily be granted the right to amend its complaint. The Supreme Court has instructed that:

> The grant or denial of an opportunity to amend is within the discretion of the District court, but outright refusal to grant the leave without any justifying reason . . . is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Foman v. Davis*, 371 U.S. 178, 182 (1962). In the Third Circuit, plaintiffs whose complaints fail to state a cause of action are entitled to amend their complaint unless doing so would be inequitable or futile. *Fletcher-Harlee Corp. v. Pote Concrete Contrs., Inc.*, 482 F.3d 247, 252 (3d Cir. 2007).[2] In *Shane v. Fauver*, 213 F.3d 113 (3d Cir. 2000), the Third Circuit counseled:

---

[1] "Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them." *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 255 n.5 (3d Cir. 2004).
[2] The *Fletcher-Harlee* court stated that "to request leave to amend a complaint, the plaintiff must submit a draft amended complaint to the court so that it can determine whether amendment would be futile." The court in *Fletcher-Harlee* also noted that the longstanding rule that leave to amend a complaint must be granted *sua sponte* stands in tension with the longer-standing rule

5

> [W]e suggest that district judges expressly state, where appropriate, that the plaintiff has leave to amend within a specified period of time, and that application for dismissal of the action may be made if a timely amendment is not forthcoming within that time. If the plaintiff does not desire to amend, he may file an appropriate notice with the district court asserting his intent to stand on the complaint, at which time an order to dismiss the action would be appropriate.

*Shane*, 213 F. 3d at 116 (citing *Borelli v. City of Reading*, 532 F.2d 950, 951 n.1 (3d Cir. 1976)).

## DISCUSSION

Defendant TCI argues that the complaint fails to allege it made any false, deceptive, or misleading statements about the character, amount, or legal status of the MBC Debt or that it otherwise used unfair or unconscionable means to attempt to collect the Debt. The Court agrees.

### I.  Count One: the complaint does not allege that Defendant TCI made false, deceptive, or misleading statements about the MBC Debt.

To repeat, Plaintiff alleges that Defendant TCI violated 15 U.S.C. § 1692e by making "false, deceptive, and misleading representations concerning the character, amount, or legal status" of the MBC Debt, in violation of subsection e(2)(A), and by "[u]sing false representations and/or deceptive means to collect or attempt to collect" the Debt, in violation of subsection e(10). ECF No. 1 ¶ 46. The Court analyzes these claims from the perspective of the "least sophisticated debtor," *Huertas v. Galaxy Asset Management*, 641 F.3d 28, 33 (3d Cir. 2011) (quoting *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006)), but will not ignore the "rational characteristics of even the least sophisticated investor and instead rely on unrealistic and fanciful interpretations" of Defendant's Letter. *Campuzano-Burgos v. Midland Credit Management, Inc.*, 550 F.3d 294, 299 (3d Cir. 2008). Under this standard, Plaintiff does not

---

that a plaintiff must submit a draft amended complaint to the court to allow the court to determine whether amendment would be futile. *Fletcher-Harlee*, 482 F.3d at 252-53.

adequately allege that Defendant made false, deceptive, or misleading statements or otherwise used deceptive means to collect on the MBC Debt.

### A. Defendant TCI did not make false or misleading statements about the character or amount of the MBC Debt.

As an initial matter, the Court agrees with Defendant that the complaint does not allege Defendant made any misrepresentations about the "character" or "amount" of the MBC Debt. *See* ECF No. 10 at 3. The complaint contains "no allegations whatsoever that TCI misstated the amount of the debt or that Plaintiff does not owe it." *Id.*

### B. TCI did not make false or misleading statements about the legal status of the MBC Debt.

Instead, Plaintiff's complaint rests on the allegation that the Letter included false or misleading statements about the "legal status" of the MBC Debt. The Court disagrees that Defendant made false or misleading statements – or omissions – about either (a) the legal status of the Debt at the time Defendant issued the Letter or (b) the potential effect that the payments sought in the Letter would have on the legal status of the Debt.

The parties agree that debt collection actions in New Jersey are governed by N.J.S.A. 2A:14-1, which allows a party to commence an action "for recovery upon a contractual claim or liability" within six years of the date of accrual of the cause of action. *See* ECF No. 1 ¶ 36; ECF No. 10 at 2 (citing N.J.S.A. 2A:14-1). "A cause of action based upon a money obligation which is payable on demand is deemed to accrue at the time of the loan." *Santiago v. Villoresi*, 2007 WL 1790740, at *2 (N.J. App. Div. June 22, 2007) (quoting *Denville Amusement Co., Inc. v. Fogelson*, 84 N.J. Super. 164, 169 (N.J. App. Div. 1964)). However, "a statute of limitations which applies to a presently existing contractual debt or obligation may be tolled by an

acknowledgement or a promise to pay." *Peck v. Donovan*, 565 Fed App'x 66, 71 n.3 (3d Cir. 2012) (quoting *Burlington County Country Club v. Midatlantic Nat'l Bank South*, 223 N.J. Super. 227, 234 (N.J. Ch. Div. 1987)).

Under New Jersey law, the expiration of the statute of limitations does not extinguish a debt but merely renders it "unenforceable in a court of law." *Huertas*, 641 F.3d at 32 (citing *R.A.C. v. P.J.S., Jr.*, 192 N.J. 81 (N.J. 2007); *Hollings v. Hollings*, 8 N.J. Super. 552 (N.J. Ch. Div. 1950), *aff'd* 12 N.J. Super. 57 (N.J. App. Div. 1951)). "There is nothing improper about making a settlement offer." *Campuzano-Burgos*, 550 F.3d at 299 (quotation omitted). The Third Circuit has held that, "when the expiration of the statute of limitations does not invalidate a debt, but merely renders it unenforceable, the FDCPA permits a debt collector to seek voluntary repayment of the time-barred debt so long as the debt collector does not initiate or threaten legal action in connection with its debt collection efforts." *Huertas*, 641 F.3d at 32-33.

### 1. TCI did not make false or misleading statements about the current legal status of the MBC Debt.

Here Plaintiff alleges that, when Defendant sent him the Letter, "more than six (6) years had elapsed since the last payment or activity on the MBC" Debt. ECF No. 1 ¶ 35. Plaintiff adequately pleads that the statute of limitations had expired at this point, rendering the MBC Debt "unenforceable in a court of law." *Huertas*, 641 F.3d at 32. But Plaintiff does not allege that Defendant made any misrepresentations about the Debt's legal status at the time it sent the Letter: Plaintiff does not claim the Letter stated that the MBC Debt was "enforceable," nor does

he allege that the Letter initiated or threatened any legal action in connection with Defendant's debt collection efforts.³

To the contrary, the Letter expressly stated that the "law limits how long you can be sued on a debt" and informed Plaintiff that, "[b]ecause of the age of your debt, Merrick Bank Corporation will *not* sue you for it." ECF No. 1-1 at 1 (emphasis added). Even the "least sophisticated investor" could not read these statements as an unlawful initiation or threat of litigation. Defendant merely sought voluntary payment on the MBC Debt, something that is permissible even when the statute of limitations has rendered the debt unenforceable. *Huertas*, 641 F.3d at 32; *see also Bodine v. First Nat. Collection Bureau, Inc.*, 2010 WL 5149847, at *4 (D.N.J. Dec. 13, 2010) (in action against defendant debt collector for issuing voluntary debt settlement notice after end of limitations period, granting judgment on pleadings for defendant because "'no cause of action for attempting to collect an expired debt' exists") (quoting *Green v. NCO Inovision*, 2010 WL 147934, at *3 (D.N.J. Jan. 11, 2010)).

Plaintiff argues that recent decisions in this district have limited *Huertas*'s holding to situations where a defendant sought voluntary *full* payment on a time-barred debt but did not make a partial settlement offer, as Defendant TCI did here. ECF No. 12 at 7-10 (citing *Filgueiras v. Portfolio Recovery Associates, LLC*, 2016 WL 1626958 (D.N.J. Apr. 25, 2016); Oral Argument Transcript, *Fackina v. RJM Acquisitions, LLC*, 14-cv-6532 (D.N.J. May 4, 2015), ECF No. 12-2 (incorporated into Order Denying Motion for Judgment on the Pleadings, *Fackina*, 14-cv-6532, ECF No. 18 (D.N.J. May 4, 2015)). Plaintiff implies that partial settlement offers, unlike letters seeking full payment, misrepresent the current legal status of time-barred debts, but

---

³ Plaintiff also does not challenge the legality of the Letter's statement that "Merrick Bank Corporation may report or continue to report" the MBC Debt "to the credit reporting agencies as unpaid." ECF No. 1-1 at 1.

9

neither *Filgueiras* nor *Fackina* fully supports this argument. Plaintiff is correct that, in *Fackina*, Judge Sheridan distinguished *Huertas* on the ground that it did not address partial settlement offers. ECF No. 12 at 8. But the settlement offer at issue in *Fackina*, unlike Defendant TCI's Letter, did not include any cautionary language informing the plaintiff that the statute of limitations had run on the debt or that the defendant would not take legal action to collect the debt. ECF No. 12-2 at 7:16-23; *see also* Complaint, *Fackina*, 14-cv-6532, ECF No. 1 ¶¶ 32-33 (D.N.J. Oct. 21, 2014). Similarly, in *Filgueiras*, Plaintiff is correct that Judge Linares held that "*Huertas* did not purport to set the outer boundaries for permissible conduct for debt collectors in seeking voluntary repayment of time-barred debts," 2016 WL 1626958, at *7, and found that it was "plausible" that several letters offering to "settle" debt that did *not* mention the statute of limitations misrepresented the legal status of the debt. *Id.* at *7-10. Judge Linares also dismissed another claim based on a collection letter offering settlement options that "crucially" included the language "[b]ecause of the age of your debt, we will not sue you for it." *Id.* at *11 (holding that, "in light of this explicit disclaimer acknowledging that the debt is time-barred, even the least-sophisticated debtor would not believe that the Debt was legally enforceable.").

    This is the same disclaimer language Defendant TCI used in the Letter here. *See also Buchanan v. Northland Group, Inc.*, 776 F.3d 393, 399-400 (6th Cir. 2015) (distinguishing *Huertas* on ground that it did not address legality of partial settlement offers and finding a collection notice that failed to inform plaintiff the statute of limitations had expired could violate the FDCPA, but noting that a letter including a disclaimer that "[t]he law limits how long you can be sued on a debt. Because of the age of your debt, [the debt owner] will not sue you for it, and [the debt owner] will not report it to any credit reporting agency" would *not* violate the FDCPA).

The Court also judicially notices nearly identical language that both the Consumer Financial Protection Bureau ("CFPB") and Federal Trade Commission ("FTC"), two agencies tasked with enforcing the FDCPA, have required collectors of time-barred debts to adopt in publicly filed consent decrees. ECF No. 10 at 5-7 (citing Consent Decree at 13, *United States v. Asset Acceptance, LLC*, No. 8:12-cv-00182, ECF No. 5 (M.D. Fla. Jan. 31, 2012) ("The law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it."); Consent Decree at 36, *Portfolio Recovery Associates, LLC*, 2015-CFPB-0023, Doc. 1 (Sept. 9, 2015) (available http://files.consumerfinance.gov/f/201509_cfpb_consent-order-portfolio-recovery-associatesllc.pdf) ("The law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it")). Although these consent decrees are neither formal rules nor formal guidance,[4] "an agency's interpretation" of a statute "may merit some deference whatever its form, given the 'specialized experience and broader investigations and information' available to the agency." *United States v. Mead Corp.*, 533 U.S. 218, 220 (2001) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 139 (1944)). The Court gives deference to the CFPB and FTC's endorsement of the cautionary language used in in Defendant's Letter.

The Court agrees with Plaintiff's argument that *Huertas* does not automatically protect all offers to "settle" time-barred debt, especially if those offers do not inform the debtor that the statute of limitations has expired. In this case, however, the plain language of the Letter's disclaimer informing Plaintiff that the statute of limitations had expired and that MBC would not

---

[4] Until 2010, Section 1692l of the FDCPA tasked the FTC with enforcing the FDCPA but explicitly did not give the FTC rulemaking authority. *See* 15 U.S.C. § 1692l(d) (1995) (amended 2010). In 2010, Congress amended the FDCPA to give the CFPB rulemaking authority "with respect to the collection of debts by debt collectors." 15 U.S.C. § 1692l(d).

sue him – the same language endorsed by the FTC and CFPB – demonstrates that Defendant did not misrepresent the legal status of the MCB Debt in the Letter.

### 2. TCI did not make false or misleading statements about the potential legal status of the MBC Debt.

Plaintiff also alleges that Defendant made false, deceptive, or misleading representations about the effect that a partial settlement payment would have on the legal status of the MBC Debt. Plaintiff claims that Defendant failed to mention that the first $62 payment would "reset" the statute of limitations and allow MBC to sue Plaintiff for the full amount of the Debt. ECF No. 1 ¶¶ 37-39, 46. Plaintiff cites a 2013 FTC report stating that, "under the laws of most states, a partial payment on a time-barred debt revives the entire balance of the debt for a new statute of limitation period." ECF No. 12 at 8 (citing Federal Trade Commission, The Structure and Practices of the Debt Buying Industry, at 47 (2013), ECF No. 12-4). Under New Jersey law, however, the Court concludes that the settlement payments solicited in the Letter would *not* restart the statute of limitations on the MBC Debt.

To repeat, the New Jersey statute of limitations on actions to enforce a contractual debt "may be tolled by an acknowledgement or a promise to pay." *Peck*, 565 Fed App'x at 71 n.3 (quoting *Burlington County Country Club*, 223 N.J. Super. at 234). "[I]f such acknowledgment or promise to pay is made after the statute has run, it will act to revive the debt for the statutory period." *Id*. Importantly, though, "an acknowledgement or promise to pay a debt will only restart the statute of limitations if it is unconditional and in a signed writing." *Rubinsky v. Zayat*, 2015 WL 3517629, at *4 (D.N.J. June 4, 2015) (citing N.J.S.A. 2A:14-24). This is because "[a]n acknowledgment or promise to pay an existing debt is deemed to constitute a new contract; therefore, it must support the implication of a promise to pay the *full amount* due immediately or

on demand." *Burlington County Country Club*, 223 N.J. Super. at 235 (emphasis added). "When a partial payment is made after the statutory period has run, the party seeking to revive the statute must show (1) that the payment was partial, and (2) an act or declaration which establishes the debtor's recognition of, and intention to pay, the *entire claim*. Mere payment is not enough." *Id.* (internal citations omitted, emphasis added); [5] *see also P.F.I., Inc. v. Kulis*, 363 N.J. Super. 292, 297 (N.J. App. Div. 2003) (statute of limitations is tolled only when "defendant's conduct demonstrated an acknowledgement of the *entire debt*") (emphasis added).

Though the New Jersey Supreme Court has not definitely held so, it appears that a partial settlement of an alleged, time-barred debt does not automatically revive the statute of limitations because it is not a recognition of, and promise to pay, the full debt.[6] *See DVL, Inc. v. Mutnick*, 103 F. Supp. 2d 293, 295-96 (S.D.N.Y. 2000) (class action settlement regarding expired note did not revive New Jersey statute of limitations on claims regarding the note, N.J.S.A. 2A:14-1, because settlement did not include a "new promise to pay the full amount of the debt immediately or on demand") (citations omitted), *aff'd* 5 Fed App'x 46 (2d Cir. 2001); *Bassett v. Christensen*, 127 N.J.L. 259, 261 (N.J. Ct. Errors and Appeals 1941) (debtor's written acknowledgment of full amount of debt did not revive New Jersey statute of limitations on creditor's claim, N.J.S.A. 2A:14-1, because the acknowledgment was not accompanied by

---

[5] In *Fackina*, Judge Sheridan cited *Burlington County Country Club* to hold that "a partial payment . . . revives the amount that's owed by the debtor, because the statute of limitations starts anew." ECF No. 12-2, 9:11-16. To the extent Judge Sheridan held that "an act or declaration which establishes the debtor's recognition of, and intention to pay, the entire claim," *Burlington County Country Club*, 223 N.J. Super. at 235, is not required to revive the statute of limitations, this Court respectfully disagrees.

[6] Plaintiff cites *Buchanan* in support of his argument. ECF No. 12 at 9 (citing 776 F.3d at 399 (partial settlement offer violated FDCPA because "an unsophisticated debtor who cannot afford the settlement offer might nevertheless assume from the letter that some payment it better than no payment," and because partial payment would restart statute of limitations). *Buchanan* is distinguishable because it involved the Michigan, not New Jersey, statute of limitations.

13

"promise to pay at once or on demand"); *Howell v. Wallace*, 18 N.J. Misc. 48, 51-52 (N.J. Cir. Ct. 1939) (Under previous New Jersey statute of limitations, debtor's offer to settle "alleged debt" did not revive the statute of limitations because the offer was for a partial payment and did not constitute an acknowledgement of the entire alleged debt, and because a creditor "is not permitted to adopt the admission or acknowledgment of the debtor and reject the conditions and qualifications which accompanied it"); *see also National Iranian Oil v. Mapco Intern. Inc.*, 825 F. Supp. 77, 80 (D. Del. 1993) (defendant's agreement to pay the principal amount, but not interest, allegedly due in a contract dispute did not toll a similar Delaware statute of limitations because the agreement "appears to express a willingness to pay [plaintiff] the principal amounts merely for the purposes of settling the dispute and not in recognition of any legal responsibility for those amounts. In other words, there appears to be a distinction between the acknowledgement of a debt and the more general acknowledgment of a willingness to pay another a certain sum.").

In this case Plaintiff was in no danger of resetting the statute of limitations on MBC's claim against him because Defendant TCI sought, at most, Plaintiff's "willingness to pay another a certain sum." *Id.* In the Letter, Defendant offered to let Plaintiff "save" on the total amount allegedly due to MBC by selecting from two "settlement" options: "6 monthly payments of $62" or a "one-time payment for $298." ECF No. 1-1 at 1. Under either option, TCI pledged to send Plaintiff "written confirmation that your account has been settled in full," *id.*, relieving Plaintiff from any further obligation to MBC without requiring Plaintiff to make any "act or declaration which establishes the debtor's recognition of, and intention to pay, the entire claim." *Burlington County Country Club*, 223 N.J. Super. at 235. Neither option required Plaintiff to admit, in writing, that he owed the full MBC Debt, and neither option required him to agree to pay the full

14

MBC Debt. ECF No. 1-1 at 1. The Letter requested a partial payment only, and "[m]ere payment is not enough" to reset the statute of limitations. *Burlington County Country Club*, 223 N.J. Super. at 236.

Defendant was not required to "inform the consumer that the statute of limitations will reset upon making the first monthly payment," ECF No. 1 ¶ 40, because, under this Court's reading of New Jersey law, that statement is incorrect. The partial settlement payments Defendant solicited in the Letter would *not* revive the statute of limitations on MBC's claim against Plaintiff, so Defendant did not make false, deceptive, or misleading representations concerning the potential legal status of the MBC Debt.

### C. The Court reserves judgment on Defendant's "safe harbor" argument.

Because the Court holds that a partial settlement payment, on its own, would not affect the legal status of the MBC Debt under New Jersey law, it need not decide whether the "fact that TCI chose to include disclosures from the FTC and CFBP consent orders" in the Letter protects it from any "liability under the FDCPA" for misrepresenting the potential legal status of the MBC Debt. ECF No. 13 at 1.

The Court observes again, however, that the courts and agencies Plaintiff references that *have* held that partial payments reset state statutes of limitations have also found that letters containing similar disclaimers do not violate the FDCPA. *See*, e.g., *Buchanan*, 776 F.3d at 400 (although Michigan statute of limitations would reset with partial payment of expired debt, statement in collection letter that "[t]he law limits how long you can be sued for a debt. Because of the age of your debt [the debt owner] will not sue you for it, and [the debt owner] will not report it to any credit reporting agency" would "correct[ ] any possible misimpression by unsophisticated consumers"); *Filgueiras*, 2016 WL 1626958 at *9-11 (accepting, without

discussion, plaintiff's allegation that partial payment "would restart the statute of limitations, giving [t]he creditor a new opportunity to sue for the full debt," but holding that a collection letter stating that "[b]ecause of the age of your debt, we will not sue you for it" did not violate the FDCPA "because the least sophisticated debtor would not interpret it [to] misrepresent the legal status of the Debt"); Federal Trade Commission, ECF No. 12-4 at 47, 48 n.201 (observing that, "under the laws of most states, a partial payment on a time-barred debt revives the entire balance of the debt for a new statute of limitations period" but citing the *Asset Acceptance* Consent Decree disclaimer that the "law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it" as compliant with the FDCPA) (citing Consent Decree at 13 *Asset Acceptance, LLC*, No. 8:12-cv-00182 (M.D. Fla. Jane 31, 2012)).

## II. Count Two: Defendant did not use unfair or unconscionable means to collect or attempt to collect on the MBC Debt.

In Count Two, Plaintiff alleges that Defendant violated "various provisions of the FDCPA, including but not limited to 15 U.S.C. § 1692f," by using "unfair or unconscionable means to collect or attempt to collect any debt." *Id.* ¶¶ 49-50. Specifically, Plaintiff alleges that Defendant violated 15 U.S.C. § 1692f by failing to disclose that the "monthly payment option would reset the statute of limitations of the alleged debt." *Id.* ¶ 51. For the reasons just discussed, this claim fails as a matter of law.

## III. The John Doe Defendants are dismissed from this action.

The complaint contains no actual allegations regarding the John Doe Defendants. Although Plaintiff demands judgment against all Defendants, Counts One and Two of the complaint assert claims against Defendant TCI only. *See* ECF No. 1 ¶¶ 43-47; 48-52. In any event, although fictitious defendants "are routinely used as stand-ins for real parties until

discovery permits the intended parties to be installed . . . an action cannot be maintained solely against Doe defendants." *Hindes v. F.D.I.C.*, 137 F.3d 148, 155 (3d Cir. 1998) (internal citations and quotations omitted). Because the Court dismisses all claims against Defendant TCI, it must also dismiss the complaint with respect to the John Doe Defendants.

## CONCLUSION

Plaintiff's complaint fails to adequately allege either (a) that Defendant TCI misrepresented the amount, character, or legal status of the MBC Debt at the time Defendant sent the Letter or (b) that Defendant misrepresented or failed to inform Plaintiff of the effect that his partial settlement payments would have on the legal status of the MBC Debt. Defendant's motion to dismiss is granted, and the complaint is dismissed without prejudice. An appropriate order follows.

DATE: 8 June 2016

William H. Walls
Senior United States District Court Judge